Filed 11/29/21  P. v. Windust CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075675 |
| v. | (Super.Ct.No. RIF146283) |
| STEVEN BLODGETT WINDUST, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Reversed and remanded with directions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Steven Blodgett Windust appeals from the denial of his petition to vacate his 2011 murder conviction and to resentence him pursuant to Penal Code[1] section 1170.95. After issuing an order to show cause and holding an evidentiary hearing, the trial court found that the jury could have convicted defendant of murder under a viable murder theory. Defendant argues the trial court applied the wrong standard in denying the petition and by failing to make an independent finding that he could still be convicted of murder under current law. We agree and remand the case to the trial court to conduct a new hearing.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Summary of Factual Background*

In October 2008, Donovan Avila, who was at defendant's home, told defendant to have Douglas Didominicus come over to his house. Avila had problems with Didominicus and wanted to scare Didominicus. Defendant arranged to have Didominicus come to his house, and Didominicus went to defendant's home. Once Didominicus entered defendant's home, Avila and Manuel Acosta grabbed Didominicus. Avila then began hitting Didominicus. Didominicus was shoved into the garage and the beating continued. Didominicus was punched and hit with the butt of a gun and the gun went off. Although he was bleeding, Didominicus was able to run around. After the gun went off,

---

[1]  All future statutory references are to the Penal Code.

defendant and Avila beat Didominicus with a baseball bat. Defendant claimed that he struck Didominicus in the arm once.

At some point, the men discussed dropping Didominicus off near a hospital. However, Didominicus was already dead. After Didominicus died, Avila, defendant, and Acosta took Didominicus's car. They picked up another man, who knew where Didominicus lived, and then burglarized Didominicus's apartment, taking a safe containing money, drugs, and a gun. Defendant received some drugs and perhaps some money and the gun.

Didominicus's body was later located in a remote area off of a dirt road. Didominicus's head was covered in a towel and wrapped with two different types of tape; his hands and feet were bound in rope; and the entire body was wrapped in a tarp and tied with more rope. A forensic pathologist opined Didominicus died from blunt force injuries to his head. He also had injuries to the back of his head, behind his left ear, and had a skull fracture. Due to the advanced state of decomposition of the corpse, the pathologist was unable to determine how long Didominicus survived after receiving the injury.

As to the murder charge, the jury was instructed on principles of express and implied malice, direct aiding and abetting, and the natural and probable consequences doctrine based on the target crime of aggravated assault. The prosecution did not pursue a felony-murder theory; instead, first degree murder was predicated on either premeditated express malice or lying in wait.

B.     *Procedural Background*

In February 2010, an information was filed charging defendant, Avila, and Acosta with premeditated first degree murder (§ 187, subd. (a); count 1); robbery (§ 211; count 2), and residential burglary (§ 459; count 3).  The information also alleged that defendant received a stolen motorcycle (§ 496d; count 5).  Defendant pleaded guilty to count 5, and proceeded to trial on the remaining charges.

In September 2011, during jury deliberations, defendant pleaded guilty to second degree murder as a lesser included offense of count 1, as well as counts 2 and 3.  Defendant was sentenced to an indeterminate term of 15 years to life, plus a determinate term of seven years eight months in state prison.

On May 20, 2019, defendant filed a petition for resentencing under section 1170.95.  He indicated that he was eligible for relief because he was tried under a theory of aiding and abetting the murder under the natural and probable consequences doctrine, he pleaded guilty to second degree murder to avoid being convicted of first degree murder, and he did not believe he could now be convicted of murder.

After appointment of counsel, the trial court found that defendant had stated a prima facie case for relief.  The court issued an order to show cause and set a hearing to determine defendant's eligibility for resentencing.

The order to show cause hearing was held on September 3, 2020.  After discussions on the matter and hearing argument from the parties, the trial court denied the petition for resentencing.  The court concluded that defendant "could be convicted,

4

beyond a reasonable doubt, of a viable murder theory . . . based upon the evidence that's in the record of conviction." Defendant subsequently appealed.

II

DISCUSSION

Defendant contends the trial court erred in denying his petition for resentencing because the court applied the wrong standard and failed to act as an independent factfinder when it concluded the People "could" prove he was guilty of murder under a viable murder theory. The People disagree and believe the court applied the correct standard.

As the parties acknowledge, there is a conflict of authority as to the proper standard of proof a trial court should apply in this context between *People v. Duke* (2020) 55 Cal.App.5th 113 (*Duke*), review granted January 13, 2021, S265309,[2] and the opposing decisions in *People v. Lopez* (2020) 56 Cal.App.5th 936 (*Lopez*), review granted February 10, 2021, S265974, *People v. Rodriguez* (2020) 58 Cal.App.5th 227 (*Rodriguez*), review granted March 10, 2021, S266652, *People v. Clements* (2021) 60 Cal.App.5th 597 (*Clements*), review granted April 28, 2021, S267624, and *People v. Fortman* (2021) 64 Cal.App.5th 217 (*Fortman*), review granted July 21, 2021, S269228.

---

[2] The Supreme Court framed the issue to be briefed in *Duke* as follows: "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under Penal Code section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under Penal Code sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?" (*People v. Duke* (2021) 478 P.3d 1207.)

Our Supreme Court will resolve this split in *Duke*, but until it does, "we join the growing chorus that requires an independent finding by the trial court," and proof beyond a reasonable doubt by the People that the petitioner is ineligible for relief. (*Fortman*, at p. 221.)

A. *Section 1170.95 Generally*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.), which amended sections 188 and 189 to limit liability for felony murder and abrogate the natural and probable consequences doctrine as applied to murder. (Stats. 2018, ch. 1015.) Section 1170.95 was added by Senate Bill No. 1437 to provide a procedure by which those convicted of murder can seek retroactive relief if the changes in sections 188 or 189 would affect their previously affirmed convictions. (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722; see *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).) A person is entitled to relief under section 1170.95 if he or she was convicted of felony murder or murder under the natural and probable consequences theory but could not now "be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

"With one narrow exception [involving peace officer victims], Senate Bill [No.] 1437 effectively eliminates murder convictions premised on any theory of vicarious liability—that is, any theory by which a person can be convicted of murder for a killing committed by someone else (such as the felony-murder theory or the natural and probable

6

consequences theory)—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 188, 189, subds. (e), (f), 1170.95.)" (*Fortman*, *supra*, 64 Cal.App.5th at pp. 222-223, fns. omitted.)

When the defendant makes a prima facia showing of eligibility, and the trial court issues an order to show cause as it did here, "the court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been [*sic*] sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1); accord, *Lewis*, *supra*, 11 Cal.5th at p. 960.) At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).) The parties may consult the record of conviction as the parties did here, or offer new or additional evidence, unless "there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, [and in such a case] the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1170.95, subd. (d)(2).)

B.   *Standard of Review*

Questions of statutory construction are reviewed de novo.  (*Clements*, *supra*, 60 Cal.App.5th at p. 613, citing *People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  A question about the correct standard to be applied under section 1170.95, subdivision (d)(3), in determining a petitioner's eligibility for resentencing is a question of law subject to de novo review.  (*Rodriguez*, *supra*, 58 Cal.App.5th at p. 237.)  However, to the extent any factual findings were made by the trial court, those are reviewed for substantial evidence.  (*Clements*, at p. 618.)

In interpreting a statute, " 'our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.' " (*People v. Acosta* (2002) 29 Cal.4th 105, 112.)  We do not consider provisions in isolation, but rather, look to the entire substance of the statute for context to determine the scope and purpose of a given provision.  (*Ibid*.)  " 'We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid*.)

C.   *Analysis*

Section 1170.95, subdivision (a)(3), requires as a necessary condition for resentencing that the petitioner "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a)(3).)  Subdivision (d)(3) of section 1170.95 places the burden on the prosecution

to "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) Read together, these provisions lead to the conclusion that a trial court must deny a petition if the People prove, beyond a reasonable doubt, that the petitioner could be convicted of first or second degree murder under the law as of January 1, 2019.

However, it appears that the trial court here applied the standard of proof as stated in *Duke*, *supra*, 55 Cal.App.5th 113; a case the People contend was correctly decided and to which we should follow, notwithstanding our decision in *Clements*. *Duke* held that the standard "is essentially identical to the standard of substantial evidence, in which the reviewing court asks ' "whether, on the entire record, a rational trier of fact *could find* the defendant guilty beyond a reasonable doubt . . . ." ' " (*Duke*, at p. 123, italics added [appellate substantial evidence standard], quoting *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We disagree that *Duke* states the correct standard of proof.

We have rejected the reasoning of *Duke* and have joined "the growing chorus" of appellate courts that require an independent finding by the trial court whether it would convict defendant on "a still-viable theory," rather than whether a reasonable jury could convict defendant on "a still-viable theory." (*Fortman*, *supra*, 64 Cal.App.5th at pp. 220-221, citing, e.g., *Clements*, *supra*, 60 Cal.App.5th 597; *People v. Harris* (2021) 60 Cal.App.5th 939, review granted Apr. 28, 2021, S267802; *Lopez*, *supra*, 56 Cal.App.5th 936; *Rodriguez*, *supra*, 58 Cal.App.5th 227.) Contrary to *Duke*, in *Clements*, like the other appellate courts, we concluded that after an evidentiary hearing, the trial court is

required to act as an independent factfinder and determine whether the People have proven the petitioner guilty of murder beyond a reasonable doubt under the law as of January 1, 2019. (*Clements*, at pp. 614-618; accord, *Fortman*, at pp. 224-225; *Rodriguez*, at pp. 241-244.) In this context, the trial court does not analyze what the previous jury could have found or what a jury could or would find now on retrial. Rather, the trial court itself, in effect, renders a verdict by finding the petitioner either guilty or not guilty of murder based on the evidence presented at the evidentiary hearing.

We do not repeat here our well-reasoned analysis in *Clements*, as well as the analyses of *Fortman*, *Lopez*, and *Rodriguez*. Suffice it to say that we find our reasoning in *Clements* and the other appellate courts' ratiocinations persuasive. We agree with our conclusion in *Clements* that the trial court must act as an independent factfinder, not simply review the evidence and determine what a jury could or would decide. In this case, based on the trial court's frequent allusions and references to what the jury could have decided based on the evidence, we find the trial court used the substantial evidence standard of review instead of acting as an independent factfinder. We thus remand the matter to the trial court to conduct a new hearing pursuant to section 1170.95, subdivision (d), and state its findings on the record as to whether the People have carried their burden of proving defendant guilty of murder beyond a reasonable doubt under current law. (See *Fortman*, *supra*, 64 Cal.App.5th at pp. 226-227.)

## III

## DISPOSITION

The postjudgment order denying defendant's section 1170.95 petition to vacate his murder conviction and for resentencing is reversed. The matter is remanded to the trial court with directions to conduct a new evidentiary hearing pursuant to section 1170.95, subdivision (d), and to make an independent determination whether the People have proven beyond a reasonable doubt that defendant is guilty of murder on a still-valid theory of liability and thus ineligible for relief under the statute.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


MILLER
J.


SLOUGH
J.

11